IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILLY STANIC,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the U.S. Social<br>Security Administration,[1]<br><br>        Defendant. | No. 15 C 8425<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[2]

In this Social Security Appeal, plaintiff Lilly Stanic ("Ms. Stanic") has filed a motion for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security denying her application for benefits ("Commissioner") (doc. 23: Pl.'s Mot. for Sum. J.). The Commissioner has filed her own motion seeking affirmance of the decision denying benefits (doc. 34: Def.'s Mot. for Sum. J.). For the reasons set forth below, Ms. Stanic's motion is granted and the Commissioner's motion is denied.

I.

On April 20, 2012, Ms. Stanic filed for disability benefits alleging that she became disabled on March 12, 2012 (R. 162–63). Her claim was denied initially and on reconsideration, and after a hearing by an Administrative Law Judge ("ALJ"), the ALJ issued an opinion denying Ms. Stanic's request for benefits (R. 8–20, 86, 98, 45–77). The Appeals Council denied her

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On October 8, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 8).

request for review (R. 1–4), making the ALJ's ruling the final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In support of her motion, Ms. Stanic argues primarily that the ALJ erred at Step Three of the sequential evaluation process because his conclusions were perfunctory and erroneous (doc. # 24: Pl.'s Mem. in Supp. of Sum. J. at 6–8). For the reasons that follow, we conclude that remand is necessary on this basis, and we therefore do not reach Ms. Stanic's additional arguments for remand. Below, we set forth the evidence relevant to this issue.

## II.

Ms. Stanic is from Croatia and is a graduate of a U.S. high school (R. 50). She was born on August 22, 1959 and was 54 years old at her hearing (R. 42). Immediately prior to her alleged onset date, Ms. Stanic worked as an office agent for an airline freight office (R. 51). She left her job on March 12, 2012, her alleged onset date, citing breast cancer, colon cancer, hernia, high blood pressure, high cholesterol, depression, joint pain, back pain, and problems sleeping as the reasons (R. 182).

In 1994, and again in 2000, Ms. Stanic went back to Croatia to undergo leg vein surgery (R. 815). In January 2005, Ms. Stanic was diagnosed with breast cancer and underwent a left breast lumpectomy (R. 199, 675). She received chemotherapy and radiation treatment for her breast cancer in Croatia (R. 199, 677).

On September 21, 2008, Ms. Stanic sought treatment at St. Alexius Medical Center in Illinois due to nausea, vomiting, and bowel obstruction (R. 673). Upon examination of her colon, her doctors discovered a mass which they suspected may be cancerous (R. 675). A biopsy of the mass revealed that it was consistent with colon cancer (R. 679, 682). Five days later, on

September 26, 2008, she underwent a hemicolectomy (R. 679–81).[3] On January 8, 2010, Dr. Peter Rantis, Jr., M.D., performed another surgery on Ms. Stanic, this one a surgical repair of a hernia (R. 781).

Beginning in March 2011, Ms. Stanic's medical record reflects several visits to Dr. Sinisa Boskovic, M.D., for treatment and follow up for her various chronic medical issues (R. 345–82, 717–51). On March 30, 2011, Ms. Stanic stated that her breast cancer medication, Femara, had caused her to gain fifteen pounds over the previous several months (R. 378). At the time, Ms. Stanic weighed 193 pounds and had a BMI of 31.24 (R. 379).[4] Ms. Stanic complained that her weight gain had agitated the mesh placed in her abdomen during her hernia repair, causing her pain (R. 378). Dr. Boskovic recommended that she diet and exercise to help alleviate the problem (R. 382). Ms. Stanic continued to visit Dr. Boskovic about once a month until September 2011 (R. 345–377). Although she typically presented to Dr. Boskovic for treatment and follow up of her chronic medical problems,[5] she sometimes additionally complained of new pain from her varicose veins (R. 369).

In September 2011, six and one half years after her left breast lumpectomy, Ms. Stanic began treatment with Dr. Sara Fredrickson, M.D., regarding her breast cancer (R. 253). On September 7, 2011, Dr. Fredrickson found that Ms. Stanic had no definite evidence of recurrent

---

[3] A hemicolectomy is a procedure to remove one side of the colon. http://www.mayoclinic.org/tests-procedures/colectomy/multimedia/right-hemicolectomy/img-20007591, *visited* on March 15, 2017.

[4] An individual's body mass index ("BMI") is "the ratio of an individual's weight in kilograms to the square of his or her height in meters." https://www.ssa.gov/OP_Home/rulings/di/01/SSR2002-01-di-01.html, *visited* on March 15, 2017. Guidelines from the National Institutes of Health (NIH), which the SSA follows, define obesity as a BMI of 30.0 or more. *Id.*

[5] As of March 30, 2011, Ms. Stanic's past medical history consisted of colon cancer, breast cancer, deep vein thrombosis, right renal lesion-stable, left pelvic cyst, hypertension, insomnia, hyperlipidemia, hyperglycemia, nicotinismus, and hernia (R. 378).

3

breast cancer, but that a chest x-ray and CT scan had revealed new findings (*Id.*). She renewed Ms. Stanic's Femara prescription and instructed her to follow-up in six months (*Id.*).

Ms. Stanic returned to Dr. Boskovic in February 2012 with complaints of left side abdominal pain near her previous hernia surgery (R. 355). On examination, Dr. Boskovic noted that Ms. Stanic did have some diffuse tenderness to palpitation in her lower left abdomen and characterized it as generalized pain (R. 356–57). He also indicated that Ms. Stanic's lumbar region was tender to palpitation and that she had a decreased range of motion in her back (R. 356–57). Accordingly, he referred her to diagnostic radiology for an x-ray (R. 357). On February 20, 2012, Ms. Stanic underwent a radiograph of her lumbar spine at St. Alexis Medical Center, which revealed some mild degenerative changes (R. 303).

On March 6, 2012, Ms. Stanic returned to Dr. Peter Rantis, the doctor who had performed her hernia surgery in 2010 (R. 781). Ms. Stanic had been experiencing pain in her left lower abdomen since her procedure two years earlier; the March 2012 visit was her first post-surgical appointment with Dr. Rantis (*Id.*). Ms. Stanic stated that coughing and sneezing worsened her abdominal pain (R. 781). Upon examination, Dr. Rantis noted that Ms. Stanic exhibited abdominal wall weakness with a possible inferior aspect of ventral hernia (*Id.*). He also noted that a recent CT scan had revealed evidence that Ms. Stanic suffered from recurrent incisional ventral hernia (*Id.*). Dr. Rantis explained to Ms. Stanic that he could perform surgery to treat her recurrent hernia, and to remove and replace the mesh currently in her abdomen (R. 782). Ms. Stanic agreed to the treatment plan (*Id.*). At her appointment, Ms. Stanic also complained of weight gain (*Id.*). As of March 6, 2012, Ms. Stanic measured 5' 7" tall and weighed 198 pounds, with a BMI of 31.01 (R. 781). Dr. Rantis diagnosed Ms, Stanic with abnormal weight gain (R. 782). She visited him twice for follow-up appointments (R. 784–87).

As of March 19, 2012, Ms. Stanic did not have any new pain complaints (R. 261). Physical examination related to her previous breast and colon cancer treatment revealed normal results, including that she had normal gait and range of motion (R. 262). A few days later, on March 23, 2012, Dr. Rantis performed surgery on Ms. Stanic's recurrent hernia (R. 468). Following the procedure, Ms. Stanic's progress reports indicated that "the surgery went as expected" and that there were "no complications" (R. 469).

After her surgery, Ms. Stanic attended follow-up appointments with Dr. Boskovic (R. 349). In April 2012, she began to report feeling depressed (*Id.*). Dr. Boskovic diagnosed her with depressive disorder and treated her with Sertraline (Zoloft) (R. 350–51). Later in the same month, Ms. Stanic was seen at St. Alexius for a physical therapy evaluation regarding her lumbago; however, after the initial evaluation, she did not return for treatment and was subsequently discharged (R. 286–87). Aside from one appointment in May 2012, Ms. Stanic did not return to Dr. Boskovic until August 27, 2012 (R. 345, 429). At that time, Dr. Boskovic noted that she had gained twenty pounds in three months due to her breast cancer medication, and then weighed 203 pounds, with a BMI of 32.76 (*Id.*).

Ms. Stanic visited Dr. Fredrickson twice for follow-up appointments regarding her breast cancer (R. 699–702). Dr. Fredrickson consistently concluded that Ms. Stanic had no evidence of recurrent cancer (R. 700, 702). As of September 12, 2012, Ms. Stanic had no complaints related to her breast cancer and her mammograms were normal (R. 699).

Through November 2012, Ms. Stanic's office visits typically concerned her chronic medical issues, bronchitis, and some tingling in her left hand (R. 421–427). In late November 2012, Ms. Stanic underwent an EMG and nerve conduction study which revealed that she suffered from mild carpal tunnel syndrome as well as mild C5-C6 radiculopathy (R. 439). The

5

tingling in Ms. Stanic's left hand continued into December 2012 (R. 748). On December 3, 2012, she complained that the sensation often woke her up; as a result, Dr. Boskovic provided her with a wrist brace (R. 748–49).

On December 12, 2012, as part of her claim for benefits, Ms. Stanic presented for a Mental Status Examination with Agency clinical psychologist, Michael E. Stone, Psy.D. (R. 689–93). Aside from other relatively normal results, Dr. Stone noted that Ms. Stanic's thought content was positive for depression and anxiety, that she exhibited problems maintaining a consistent level of attention and concentration throughout the examination, and that she was unable to recall a list of three objects after three minutes (R. 690). Dr. Stone diagnosed her with dysthymic disorder,[6] generalized anxiety, breast and colon cancer, chronic pain, and hypertension (R. 692).

On March 29, 2013, Ms. Stanic presented to Dr. Mensur Sunje, M.D., M.Sc., with complaints of aching pain, cramping, heaviness, itching, and restlessness in both legs (R. 815). Ms. Stanic stated she had experienced these symptoms since 1983 and that they made it difficult for her to sit or stand for long periods of time or perform household chores (*Id.*). Ms. Stanic stated that she had tried to relieve her symptoms through taking NSAIDs,[7] walking, avoidance of prolonged sitting and standing, leg elevation, ambulation, and weight management, all without significant improvement (*Id.*). Upon a review of her symptoms, Dr. Sunje noted that Ms. Stanic was positive for muscle cramps, muscle pain, cramps, reticular veins, varicose veins, and

---

[6] Dysthymic disorder is continuous, long-term depression that is less severe than major depression. http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/home/ovc-20166590, *visited* on March 15, 2017.

[7] NSAID stands for "nonsteroidal anti-inflammatory drug." http://www.mayoclinic.org/drugs-supplements/ibuprofen-oral-route/description/drg-20070602, *visited* on March 15, 2017.

telangiectasia (R. 816).[8] Dr. Sunje performed a bilateral venous ultrasound study, which revealed no evidence of deep venous thrombosis in either leg; however, the study did reveal that Ms. Stanic had venous insufficiency and valvular reflux on both legs which was consistent with the nature of her complaints (R. 817). Dr. Sunje then prescribed additional NSAIDs and elastic compression stockings, advised her to avoid prolonged sitting and standing, and instructed her to practice ambulation, leg elevation, and weight management (R. 818).

In April 2013, Ms. Stanic returned to Dr. Boskovic with complaints of low back pain which radiated to her legs, and some occasional numbness and tingling in her left foot (R. 737). Upon examination, Ms. Stanic had some tenderness in her back, but her straight leg raise was within normal limits (*Id.*). Despite continued radiating pain, her results were similar at a follow-up appointment two weeks later (R. 734).

On September 20, 2013, Ms. Stanic returned to Dr. Sunje (R. 812–14). She complained that she had not experienced any significant relief from the aching pain, cramping, itching, restlessness, and heaviness in her legs since her previous visit (R. 814). On October 11, 2013, Dr. Sunje performed an endovenous laser ablation ("EVLA") of the left great saphenous vein (R. 805).[9] Following the procedure, Ms. Stanic was advised to avoid strenuous exercise for two weeks, avoid lifting more than twenty pounds, and to continue the instructions provided to her in March (*Id.*).

On October 15, 2013, Ms. Stanic presented for a follow-up appointment with Dr. Sunje, during which she complained of tenderness and swelling throughout the course of her treated

---

[8] Telangiectasia are permanently dilated small blood vessels. http://www.mayoclinic.org/diseases-conditions/crest-syndrome/multimedia/telangiectasia/img-20008239, *visited* on March 15, 2017.

[9] An ablation is a minimally invasive procedure to destroy abnormal tissue that occurs with many medical conditions. http://www.mayoclinic.org/tests-procedures/ablation-therapy/basics/definition/prc-20012646, *visited* on March 15, 2017.

vein (R. 805). Despite her complaints, Dr. Sunje opined that the procedure was successful (R. 807). Also in October 2013, Ms. Stanic returned to Dr. Fredrickson for worsening back pain (R. 709). Dr. Fredrickson recommended that she undergo a bone scan (*Id.*). On October 14, 2013, Ms. Stanic underwent another colonoscopy (R. 794–97). The procedure went well without any complications (R. 795).

On November 7 and 21, 2013, Ms. Stanic returned to Dr. Boskovic (R. 717–24). At both appointments, Dr. Boskovic noted that Ms. Stanic had some pain during the straight leg raise and that her gastrointestinal system was tender to palpitation (R. 717, 721). At her November 21, 2013 visit, Ms. Stanic weighed 214 pounds and had a BMI of 34.54 (R. 717). Also in November, Ms. Stanic presented to Dr. Sunje, who performed an EVLA of the left small saphenous vein (R. 801). She was able to ambulate immediately after the procedure and was instructed to return within seventy two hours for a follow-up appointment (R. 804).

### III.

On April 29, 2014, the ALJ issued an opinion finding that Ms. Stanic was not disabled (R. 11–16). In his opinion, which followed the familiar five step process for evaluating disability, the ALJ determined at Step Two that Ms. Stanic had the following severe impairments: lumbar degenerative disc disease/lumbago, venous disease, carpal tunnel syndrome, and status post breast cancer and hernia repair (R. 13). The ALJ also noted that Ms. Stanic suffered from dysthymic disorder, depression, and anxiety, but concluded that those impairments were non-severe (*Id.*). Specifically, he found that Ms. Stanic's non-severe impairments did not singly, or in combination, cause her more than mild limitations in her ability to perform basic mental work activities (*Id.*). Moreover, the ALJ opined that due to the "totality of the evidence," Ms. Stanic failed to demonstrate more than "'mild' limitations in activities of daily living, social functioning

8

or concentration, persistence and pace or any episodes of decompensation" as required by the disability regulations (*Id.*).

At Step Three, the ALJ held that none of Ms. Stanic's impairments met or equaled the severity of a listed impairment, stating only that "[i]n reaching this conclusion, I have considered the opinions of the State Agency Medical consultants who have evaluated this issue . . . and reached the same conclusion" (R. 14). Next, the ALJ determined that Ms. Stanic had the residual functional capacity ("RFC") to perform light work, except that she could never climb ladders, ropes, or scaffolds and no more than frequently finger, handle, balance, stoop, kneel, crouch, crawl, or climb ramps and stairs (R. 14). The ALJ also found that Ms. Stanic must avoid concentrated exposure to hazards (*Id.*).

Although the ALJ determined that Ms. Stanic's medically determinable impairments could reasonably be expected to cause her symptoms, he found that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible (R. 14–15). With regard to Ms. Stanic's surgeries, the ALJ noted that she had not had a reoccurrence of breast cancer since she underwent treatment in 2008 and that her March 2012 hernia procedure was "fully successful" (R. 15). He further noted that Ms. Stanic was noncompliant with her prescribed physical therapy for lumbago (*Id.*). The ALJ pointed to several medical records spanning from December 2012 to December 2013 which indicated that Ms. Stanic periodically complained of low back pain, but also that her gait was normal, she had no ambulation deficiencies, and her tests were within the normal range (*Id.*). The ALJ determined that the aggregate medical evidence discredited Ms. Stanic's testimony regarding the intensity and persistence of her symptoms (*Id.*). Instead, the ALJ found that Ms. Stanic's records demonstrated that she retained generally sufficient strength, gait, and range of movement (*Id.*).

The ALJ also incorporated his finding that Ms. Stanic retained sufficient strength, gait, and range of movement into his RFC determination (R. 16). Due to his finding, the ALJ limited Ms. Stanic to light work (R. 16). In doing so, he also gave "significant weight" to the opinions of two Disability Determination Services doctors, Drs. Vincent and Jhaveri, who had reviewed the medical record in August 2012 and January 2013 (R. 16, 78–98). Specifically, Dr. Vincent opined that Ms. Stanic could occasionally lift/carry up to twenty pounds, frequently lift/carry up to ten pounds, and could stand and/or walk for six hours and sit for six hours in an eight hour work day (R. 78–85). Additionally, he determined that Ms. Stanic did not meet any of the listings (*Id.*). On reconsideration, Dr. Jhaveri assessed Ms. Stanic as having the same RFC, including that she did not meet any of the listings (R. 87–98). In generally crediting the opinions of the non-examining, non-treating doctors, the ALJ did not discuss their opinions in any detail.

Finally, based on his articulated RFC, the ALJ opined that Ms. Stanic could perform her past relevant work as an airline freight office agent (R. 16). He stated that the work was performed at a level which would constitute substantial gainful employment. (*Id.*).

### IV.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence."

10

*Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). We remand because the ALJ failed to build a logical bridge between the evidence and his Step Three conclusions.

*First,* the ALJ determined that Ms. Stanic did not meet or equal the severity of any of the listings (R. 14). As we noted above, the ALJ's entire discussion of whether Ms. Stanic met or equaled a listing was his comment that he had considered and agreed with the State Agency doctors' opinions. Without a more thorough analysis, the Court cannot trace the ALJ's "path of reasoning" between the evidence and his conclusions.

The Seventh Circuit has held that when considering whether an applicant's condition meets or equals a listing, the ALJ must discuss the specific listing he considered and offer more than a perfunctory analysis. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (stating that "an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require remand."). The ALJ's brief discussion fails to mention *any* specific listing he considered in relation to Ms. Stanic's disability status, despite the fact that he determined she suffered from several severe impairments including disc degeneration (listing 1.04), venous disease (listing 4.11), and carpal tunnel syndrome.

The ALJ's failure to reference the applicable listings is compounded by his a "perfunctory analysis" regarding his findings. In his one sentence discussion, the ALJ did not articulate his consideration of any evidence or provide any rationale for his conclusions. The extensive record contains several significant pieces of evidence that the ALJ could have considered at this step in his analysis, including the radiograph of Ms. Stanic's lumbar spine from February 2012 which revealed degenerative changes in her back and her painful straight leg raise results from November 2013. The ALJ also failed to acknowledge Ms. Stanic's treatment

records from Dr. Sunje, which demonstrated her long history of venous leg pain and which required her to undergo an EVLA in both her great and small saphenous vein. The Court finds the ALJ's omission of any discussion regarding Ms. Stanic's "impairments in conjunction with the listings frustrates any attempt at judicial review." *Brindisi*, 315 F.3d at 786. The Court remands so that the ALJ can build the requisite bridge between the evidence and his Step Three conclusions. On remand, the ALJ should articulate the specific listings he considered and provide a discussion of the evidence to support his conclusions.

*Second*, the ALJ failed to consider whether Ms. Stanic was disabled due to the combined effect of her obesity on her other impairments. While the ALJ did not find Ms. Stanic's weight to be a severe impairment, the record fully demonstrates her history of obesity starting with abnormal weight gain in March 2012 when she weighed 198 pounds and had a BMI of 31.01. By November 2013, her weight had increased to 214 pounds, resulting in a BMI of 34.54. At least two of Ms. Stanic's doctors, Dr. Boskovic and Dr. Sunje, recommended that she try to lose weight as a way to alleviate some of her pain and other symptoms.

An ALJ's overall assessment of disability must encompass an applicant's impairments in the aggregate, and more relevantly, the ALJ must consider an applicant's obesity in combination with her other impairments. *See Martinez v. Astrue*, 630 F.3d 693, 698–99 (7th Cir. 2011), *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Social Security Ruling 02-1p points out that obesity may increase the severity of existing impairments, especially musculoskeletal impairments, to an "extent that the combination of impairments meets the requirements of a listing." SSR 02-1p. Similarly, several Seventh Circuit cases have criticized ALJ's for failing to consider an applicant's obesity in combination with their degenerative disc disease. *Gentle v. Barnhart*, 430 F.3d at 868 (finding that an ALJ was required to discuss the effect an applicant's

obesity would have on her dis[c] disease); *see also Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (criticizing an ALJ's failure to consider an applicant's obesity in combination with the applicant's disc disease, despite the fact that her obesity was not disabling on its own); *cf. Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010) (holding that the ALJ properly consider an applicant's obesity in combination with her other impairments when he articulated the listings he considered and cited to evidence which demonstrated the applicant did not have any disabling functions due to her obesity).

Here, the ALJ concluded that Ms. Stanic suffered from, *inter alia*, lumbar degenerative disc disease. While he was not required to find that Ms. Stanic was disabled due to her lumbar degenerative disc disease alone, he was required to discuss the impact Ms. Stanic's obesity would have on the severity of this and her other impairments. For example, Dr. Sunje recommended that Ms. Stanic avoid prolonged sitting or standing because of the impact on her varicose veins and subsequent pain. Nothing in the ALJ's opinion assures us that he accounted for how Ms. Stanic's obesity might affect such limitations.

We recognize that an ALJ is not required to address every piece of evidence in the record. But here, the ALJ's failure to cite to *any* listings, explicitly discuss *any* of the medical records as they related to his RFC determination, or consider the effect of Ms. Stanic's obesity on her impairments has resulted in a failure to build a logical bridge between the evidence and the ALJ's conclusion that Ms. Stanic failed to meet or met or equal any of the listings at Step Three of his analysis. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). For the foregoing reasons, we remand the case so that the ALJ may provide a more thorough analysis of how he reached his Step Three determinations. If the ALJ concludes that Ms. Stanic's severe

impairments do not meet or equal a Listing, the ALJ should then consider – and explain – the extent to which Ms. Stanic's obesity (in combination with her impairments) affects her RFC.

## CONCLUSION

For the reasons stated above, we grant Ms. Stanic's motion to remand (doc. # 23) and deny the Commissioner's motion to affirm (doc. # 34). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATED: March 20, 2017